1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  WAYNE BERRY AND KAREN BERRY,                CASE NO. 08CV2392-LAB (NLS)
    Husband and Wife,
12                                              **ORDER ON SUMMARY**
                              Plaintiff,        **JUDGMENT**
13         vs.

14  DR. MICHAEL MARTIN, M.D. and JANE
    DOE MARTIN, Husband and Wife;
15  ANESTHESIA SERVICE MEDICAL
    GROUP, INC.; and SCRIPPS
16  MEMORIAL HOSPITAL LA JOLLA,

17                              Defendants.

18

19        Wayne Berry underwent spine surgery at Scripps Memorial Hospital on September

20  26, 2007.  His vision was fine before the surgery, but horrible after; he also left surgery with

21  renal failure and impaired cognition.  Berry sued his attending anesthesiologist Dr. Michael

22  Martin as well as Scripps for negligence on the theory that these injuries are attributable to

23  lapses in his surgical care.  Now before the Court is Scripps's motion for summary judgment.

24  Dr. Martin has not moved for summary judgment.

25  **I.    Legal Standard**

26        Summary judgment should be granted "if the pleadings, the discovery and disclosure

27  materials on file, and any affidavits show that there is no genuine issue as to any material

28  fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

1   All reasonable inferences are to be drawn in favor of the non-moving party. *Surfvivor Media,*

2   *Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). Reasonable inferences are those

3   supported by a chain of logic, rather than speculation. *Juan H. v. Allen*, 408 F.3d 1262,

4   1277 (9th Cir. 2005). The Court may not weigh the evidence or make credibility

5   determinations. *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009).

6   Reasonable inferences are those supported by a chain of logic, rather than speculation.

7   *Juan H. v. Allen*, 408 F.3d 1262, 1277 (9th Cir. 2005). In order to deny a summary judgment

8   motion, "[t]here must be enough doubt for a reasonable trier of fact to find for [the non-

9   moving party]." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) (internal

10   quotations omitted).

11   **II.   Summary of Argument**

12       Berry's complaint doesn't allege, specifically, what happened before or during his

13   surgery that he believes makes Scripps responsible for his loss of eyesight and other

14   injuries. But the briefing clears it up: Berry's blood pressure prior to surgery was low, and

15   the nurses at Scripps failed to notify his attending surgeon of that fact. As Berry's opposition

16   brief puts it, "The one material fact in dispute is whether or not the nursing staff had a duty

17   to notify the physician of the low blood pressure." (Doc. No. 39, p. 7.) And even that's not

18   exactly right. The question isn't whether the nursing staff had a duty to notify, but whether

19   their alleged breach of that duty caused a surgery to take place that otherwise wouldn't have,

20   and from which Berry emerged the worse.

21       This theory of liability emerges from the deposition testimony of Berry's medical

22   expert, Dr. Michael Wingate. It's worth reciting that testimony at some length.

23

24           Q: "And if I understand it correctly, there's only one opinion set
       forth within your report that indicates that there was a breach in

25           the standard of care and that's your belief that the standard of
       care requires the nurses contact [sic] Dr. Tung and notify both

26           him and Dr. Martin of the low blood pressure; is that correct?"
       (Wingate Dep. 149:5–11.)

27
       A: "Yes." (*Id.* at 12.)

28
       Q: "Okay. And that's all of the opinions regarding the breach in

the standard of care you have as to the nursing staff; is that correct?" (*Id.* at 13–15.)

A: "That's my only opinion which I believe contributed to the causation of the injuries." (*Id.* at 16–17.)

Q: "And in terms of the issue of causation it's your belief that had the nurse notified Dr. Tung of the pre-operative blood pressure, this Plaintiff would not have sustained the injuries; is that correct?" (*Id.* at 153:15-18.)

A: "Yes." (*Id.* at 19.)

Q: "That's based on the assumption that Dr. Tung would not have taken this patient to surgery with that pre-operative blood pressure, true?" (*Id.* at 20–22.)

A: "Yes." (*Id.* at 23.)

Dr. Wingate alleges the same in a report that he provided to Berry's counsel. (Doc. No. 39-1, Ex. E.) The parties don't appear to dispute that Berry was injured *during* surgery. The experts on both sides conclude as much (*Id.* at 149:23–25; *see also* Mazzei report, p. 3), and a post-surgery MRI suggested that he suffered a stroke. (Doc. No. 37-4, Ex. H.) The question is whether the stroke is attributable to the failure of the Scripps nursing staff to inform Berry's attending physicians of his low blood pressure.

Scripps doesn't contest that the attending nurse didn't bring Berry's blood pressure to the attention of Dr. Martin or Dr. Tung. It certainly presents no evidence that she did, and actually concedes in its opposition brief that whether she did is "unclear." (Doc. No. 37-1, p. 6.) Equally as important, Scripps doesn't go to great lengths to contest Berry's claim that the injuries he suffered during surgery were caused by, or in some way related to, his low blood pressure. There would be no point in that, anyway, of course, because it would pit Scripps's expert against Berry's, which is the perfect instance in which summary judgment is inappropriate. What Scripps does argue is that it *wouldn't have made a difference* if the nurses had reported Berry's blood pressure to Dr. Martin and to Dr. Tung because Dr. Tung testified that he would have gone forward with the surgery regardless. If this is true, it's impossible that Scripps *caused* Berry's injuries, and Berry's negligence claim against Scripps must fail. Here is the relevant portion of Dr. Tung's deposition:

Q:  What I want to ask you, I want to give you what we call a hypothetical question and ask you a question based on these hypothetical things, and I'm just asking you for the purposes of the question to assume as being accurate.  Whether they are or not is another question, but that's independent of the question.

So for purposes of a hypothetical question, in a patient such as Mr. Berry who is a 52-year-old man with a history of hypertension who is being treated with anti-hypertensive medication such as Benicar which he was receiving daily 20 milligrams per day, and that he has last taken the date prior to the surgery and who was NPO or nothing by mouth for at a minimum of six hours prior to his admission to the hospital, and then who was admitted to the hospital on the morning of September 26th for surgery consisting of removal of instrumentation exploration of fusion and extension of fusion to the L4/5 level.

If you had learned during – or prior to the surgery that Mr. Berry's vital signs as taken by the preoperative nurse that morning were temperature 98.1 – in fact, you know what I can do, Doctor, is direct you to a page, the last page on that exhibit. This might make it easier for you to follow.

[The pre-op surgical checklist] contains the vital signs I'm going to say to you.  So following with that question, further assuming that the vital signs were temperature 98.1, pulse 67, respiratory rate 18, blood pressure 100 over 51 with an 02 saturation level of 98 percent.

And then further assume for the purposes of the question, if you look just two pages earlier on the anesthesia note, that the preinduction blood pressure by the anesthesiologist was 105 over 60 and that the anesthesiologist had cleared the patient at least from an anesthetic perspective for going forward with the surgical procedure.

If you were aware of all of those things and all of these hypothetical assumptions, is there anything about those preoperative blood pressures which would have caused you to either have not performed the surgery that day or delayed performance of the surgery to do any further investigation with regard to the blood pressure?

A:  No.

Q.  And why not?

A:  It's normal blood pressure.

Q:   And for purposes of performing this type of surgical procedure, did you have a preference from a surgical perspective as to the type of blood pressure you like to see maintained, either keep the patient higher than normal, lower than normal, or anything along that nature?

08CV2392

A: You mean during surgery?

Q: Correct, exactly.

A: Just their normal blood pressure.

Q: So in a patient such as Mr. Berry, a preoperative blood pressure of 100 over 51 in light of his history of hypertension and treatment with anti-hypertensive medication, that wouldn't cause you any concern in terms of proceeding with the surgery?

A: No.

Q: And the same is true with the preinduction blood pressure of 105 over 60, correct?

A: Correct.

(Tung. Dep. 21:12 – 24:1.)  Dr. Wingate even conceded that the nursing staff at Scripps would be off the hook if Dr. Tung knew of Berry's preoperative blood surgery and proceeded with surgery regardless.

Q: If the nurse notified Dr. Tung of the pre-operative blood pleasure, and he still elected to take the patient to surgery, then you would agree the nurses – did not cause or contribute to the patient's injuries?

A: I would only agree at that point that the nurse didn't contribute then if Dr. Tung made that decision.

(Wingate Dep. 167:12–19.) Berry's response to all of this is that Dr. Tung, in his deposition, was responding to a general hypothetical that only approximated the facts of Berry's case, and for this reason his testimony can't be relied upon as proof of what he would have done had the Scripps nurses actually informed him of Berry's blood pressure.

**III.     Discussion**

Berry accuses Scripps of negligence.  Negligence requires a causal connection between allegedly negligent conduct and some resulting injury.  Absent that causal connection, there's no negligence.  This is the legal backdrop for Scripps's summary judgment motion.  Could the alleged failure of the nurses to inform Berry's surgeon of his blood pressure have *caused* the surgery to go forward with undue attention to a critical medical fact?

Some of Berry's arguments miss the mark.  For example, Berry asserts that his expert Dr. Leo Martin "states that he would not have proceeded if the blood pressure was that low" and "opines in no uncertain terms that had the physician known all three medications Plaintiff Wayne Berry was taking, and all other factors, the surgery would not have gone forward." (Doc. No. 39, pp. 7–8.)  There are a lot of problems here.  As the Court reads the statement of Dr. Leo Martin, he did not say "surgery would not have gone forward" if Dr. Tung had been better informed.  What he did say is that, in his opinion, surgery *shouldn't* have gone forward:

> In my opinion Dr. Martin did not properly evaluate Mr. Berry preoperatively.  Dr. Martin should have recognized that Mr. Berry's preoperative blood pressure of 100/51 mmHg was unusually low for any frightened, middle-aged male with obesity, a smoking history, and hypertension treated with three medications . . . I cannot tell why Mr. Berry's blood pressure was so low preoperatively, but had Dr. Martin discovered that Mr. Berry's preoperative blood pressure was very much lower than normal for him, Dr. Martin should have postponed Mr. Berry's surgery until the cause of the low blood pressure was discovered.

(Doc. No. 39-1, Ex. C, p. 10.)  That's the first problem: Berry's characterization of Dr. Leo Martin's statement is simply inaccurate.  The second problem is that Dr. Leo Martin's statement doesn't touch on the causation prong of Berry's negligence claim.  It may be that *he* wouldn't have taken Berry into surgery, and that he believes Dr. Tung *shouldn't have*, but the question here is whether Dr. Tung would have taken Berry into surgery had the nurses notified him of Berry's blood pressure.[1]  Third, Dr. Leo Martin's statement focuses on the conduct of Berry's anesthesiologist, not the nurses who attended to him prior to surgery and whose conduct is the basis of Berry's negligence claim against Scripps.  In fact, to the extent Dr. Leo Martin suggests that "Dr. Martin did not properly evaluate Mr. Berry preoperatively" it would appear that Dr. Martin, not the nursing staff, is ultimately to blame for Berry going to surgery when medical wisdom counseled otherwise.  Fourth, in his own pleadings Berry makes clear that his only grievance with the nurses is that they failed to inform Dr. Tung of

---

[1] The same can be said of Berry's argument that "Wingate states that the hospital should have advocated for Plaintiff Wayne Berry and informed Defendant Martin about the low blood pressure." (Doc. No. 39, p. 8.)  The question isn't what the Scripps nurses *should have* done; it is whether Dr. Tung would have proceeded to surgery even assuming they did the right thing and informed him of Berry's blood pressure.

1    Berry's low blood pressure, but by Dr. Leo Martin's own testimony the blood pressure

2    information *alone* wouldn't have counseled against surgery. It was the blood pressure, along

3    with Berry's medical history, current medical state, and age, that so counseled, and there's

4    no argument or evidence from Berry that the nurses provided everything *but* the blood

5    pressure information to Dr. Tung.

6         Berry also misses the mark by arguing, "First and foremost, Plaintiff Wayne Berry

7    would not be blind but for the surgery. The surgery caused the blindness. Had the surgery

8    not gone forward, Mr. Berry would not be blind." (Doc. No. 39, p. 8.) The question isn't

9    whether the surgery caused the blindness; it's whether the Scripps nurses are responsible

10   for the fact that the surgery went forward, in the first place, by not raising concerns about

11   Berry's blood pressure with Dr. Tung.

12        That brings the discussion to what is probably Berry's best argument: Dr. Tung's

13   deposition testimony, in which he said he would have proceeded with surgery in spite of

14   Berry's blood pressure, was based on a hypothetical that didn't include all of the relevant

15   facts. In fact, Dr. Tung didn't even have an independent recollection of Berry when he was

16   deposed. (Tung Dep. 6:14–16.) But the Court disagrees, strongly, with Berry's take on the

17   reliability of Tung's testimony. He may have been responding to a hypothetical when he said

18   he would have taken Berry to surgery even with knowledge of his blood pressure, but the

19   hypothetical included a wealth of information. It included Berry's age, and the fact that he

20   had a history of hypertension. It included one of the hypertension medications he had been

21   taking, his daily dosage, and the last time he had taken it. It included the fact that he'd had

22   consumed nothing by mouth for 6 hours prior to the surgery.  It included the entire

23   preoperation surgical checklist, which contained Berry's temperature, pulse, respiratory rate,

24   and blood pressure with O2 saturation level.  It also included a "preinduction blood

25   pressure," and the fact that Berry was cleared for surgery by the anesthesiologist. (Tung

26   Dep. 21:18–22:25.)

27        What facts *didn't* the hypothetical posed to Dr. Tung include?  Berry doesn't really

28   say. He just points back to Dr. Tung's deposition and the doctor's admission that one other

1  medication *not* included in the hypothetical — triamterene hydrochlorothiazide, or HCTZ —

2  could impact a patient's blood pressure.  (Tung Dep. 24:22–25:17.)  But the deposition

3  testimony excerpted by Berry stops there.  As far as the Court can tell, his attorney did not

4  follow up and ask Dr. Tung if he would answer the hypothetical differently had he known

5  Berry was taking HCTZ — and there's no evidence anywhere else in the record that he

6  would have.  The way the Court reads the deposition testimony, in fact, Berry's attorney was

7  attempting to develop the argument that it was unwise to go forward with the surgery, not

8  that Dr. Tung would not have gone forward with the surgery had he been presented with

9  more facts about Berry's medical history.[2]  The mere fact that the hypothetical posed to Dr.

10  Tung omitted one anti-hypertension medication Berry had been taking is unavailing,

11  particularly when the issue on summary judgment is whether the alleged failure of the

12  Scripps nursing staff to report Berry's *blood pressure* to Tung caused surgery to go forward

13  that otherwise wouldn't have.  Berry has nothing other than metaphysical doubt with which

14  to impeach Dr. Tung's testimony.  This is insufficient to survive a motion for summary

15  judgment.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

16  (1986).  *See also* Fed. R. Civ. P. 56(c)–(e).

17       The Court also rejects Berry's argument that Scripps has moved for summary

18  judgment only with respect to count one of the complaint.  That count, for "Negligence -

19  Medical Malpractice," is directed at Dr. Martin and Anesthesia Medical Group, not Scripps.

20  It is based on the allegation that Dr. Martin failed to take heed of Berry's blood pressure

21  before and during his surgery.  Count two of the complaint accuses Scripps of negligence,

22  so naturally that is the only count at issue on Scripps's motion for summary judgment.  But

23  this isn't a motion for partial summary judgment, as Berry suggests, because as far as

24  Scripps is concerned it is out of this case if count two can't survive summary judgment.

25  //

26

27       [2]  The deposition testimony is ambiguous, but it's possible that the document

28  presented to Dr. Tung by Berry's attorney in which he identified HCTZ as a medication impacting one's blood pressure was the same surgical checklist that he was presented with as part of the hypothetical at issue.

1  Whereas Berry's claim against Scripps draws on the expert testimony of Dr. Wingate, his

2  claim against Martin draws on the exert testimony of Dr. Leo Martin. (Doc. No. 39-1, Ex. C.)

3       Nor is Scripps's motion one for only partial summary judgment because it fails to

4  address the lack of informed consent.  Berry mentions informed consent in a single

5  paragraph in his complaint (Doc. No. 1 ¶ 23) but fails to develop the claim there or in his

6  opposition brief, focusing instead on how the Scripps nurses' alleged failure to notify Dr.

7  Tung of his blood pressure caused a surgery to go forward that otherwise wouldn't have.

8  Moreover, as Scripps's reply brief explains, the duty to inform a patient falls on physicians,

9  not a hospital or its nursing staff.

10  **IV.   Conclusion**

11       Berry's complaint against Scripps is simple.  The nursing staff at Scripps failed to

12  relay critical blood pressure information to Berry's surgeon, which in turn caused that

13  surgeon to proceed with a surgery that was inadvisable.  The response to that claim is also

14  simple.  The surgeon testified that the blood pressure was normal, anyway, and wouldn't

15  have kept him from operating on Berry.  Berry has no meaningful rebuttal to that testimony,

16  which means there is no genuine issue as to any material fact and summary judgment is

17  appropriate. After a thorough review of the pleadings and the record, it appears that Berry's

18  stronger — thought not necessarily meritorious — claims are against his attending

19  physicians Drs. Martin and Tung for seeing him through a surgery that he believes should

20  never have been performed.  The claims against Scripps, however, fall flat, and the

21  hospital's motion for summary judgment is **GRANTED**.  Because the Court needn't consider

22  the testimony of Dr. William Mazzei and Timothy Luckett, RN, to reach this conclusion, it

23  does not rule on the admissibility of their declarations.

24       **IT IS SO ORDERED**.

25  DATED:  October 20, 2010

26

27  **HONORABLE LARRY ALAN BURNS**
United States District Judge

28

- 9 -                                                    08CV2392